SILVER'S LUNCH STORES, INC., Plaintiff, *v.* THE UNITED ELECTRIC LIGHT AND POWER COMPANY, Defendant.

City Court of New York, New York County, February 18, 1932.

*Schmer & Wechsler* [*Joseph J. Mintzes* of counsel], for the plaintiff.

*Beardsley & Taylor* [*Jacob H. Goertz, William L. Ransom, Charles I. Taylor* and *Edwin D. Kyle, Jr.,* of counsel], for the defendant.

RYAN, J. Plaintiff is a customer of the defendant company and seeks to recover a refund of moneys for electric service supplied by defendant as per bills rendered and paid by plaintiff. Concededly the bills were rendered according to the plaintiff's application for service and the service classification under which it applied, and according to the rate schedule of the defendant company in force at the time the contract was entered into, and were for the correct and lawful amounts according to the rate schedule. The claim is made that plaintiff would have paid less for electric service if it had applied for and obtained service under a service classification other than the one under which it did apply for and receive service, and that defendant should have undertaken to select for the plaintiff originally such other service classification and made such other contract.

Plaintiff contends that defendant should refigure said bills for the period involved and make refund of moneys paid, as though the plaintiff had originally selected and applied for service under the service classification and contract which it now alleges would have been more economical for it. To that claim the defendant refused to accede; hence this action.

The complaint sets forth two causes of action, one based on negligence and the other on breach of warranty. In the first cause of action it is alleged that the plaintiff applied to the defendant for electric power service to be used in connection with the plaintiff's business at No. 175 Eighth avenue borough of Manhattan, city of New York; that the defendant, as required by law and pursuant to agreement, undertook and agreed to select for the plaintiff a service classification or contract for service of electric current to the plaintiff at the most reasonable rates and most suitable and favorable to the plaintiff's requirements; that the plaintiff was ignorant of the service classification most suitable for it and relied upon defendant to select same; that the defendant negligently and carelessly and without proper investigation selected for the plaintiff a No. 2 rate contract, which was not suitable and favorable to the plaintiff's requirements, since the plaintiff required a contract rate for current which was used exclusively for power purposes; that the proper rate which the defendant should have selected for the plaintiff was a rate known as No. 6 contract, which rate is cheaper than that which was offered by the defendant and which was more favorable to the plaintiff's requirements; that by reason of the

defendant's negligence in having selected the No. 2 rate contract, instead of the proper rate No. 6 contract, the plaintiff was damaged to the extent of $2,440.39.

The second cause of action is substantially the same as the first, and alleges that " the defendant selected for the plaintiff the contract known as No. 2 rate, representing and warranting that the said contract was the most suitable and favorable to the plaintiff's requirements " and " that the plaintiff relying upon said representation and warranty, did enter into the aforesaid contract; " that the rate No. 2 was not the most suitable and favorable to plaintiff's requirements but that a cheaper rate, known as No. 6, was more suitable; that by reason of the defendant's breach of warranty plaintiff has been damaged in the sum of $2,440.39.

As to defendant's answer: The material allegations of the complaint are put in issue by the answer, and new matter is set up in two separate defenses. As to the first defense, the defendant is an electric corporation subject to the provisions of the Public Service Law, engaged in the distribution and sale of electric energy; that the defendant supplies electric service to all applicants for service in the county of New York who comply with the provisions of law and the tariff schedules of the defendant; that the defendant kept on file with the Public Service Commission and kept open to public inspection schedules showing all rates and charges made, all forms of contracts, and all rules and regulations relating to rates or service, in the form required by the Public Service Law and prescribed by the Public Service Commission, including a description of the various classifications of service; that plaintiff made written application to defendant under date of March 7, 1927, for electric service under service classification No. 1, for retail light, heat and power which was accepted by the defendant and which constituted a contract between the parties; and that defendant supplied plaintiff with electric service under said contract until March 5, 1930, for which the plaintiff freely paid; that on February 4, 1930, plaintiff made written application for electric service under service classification No. 2, for wholesale light, heat and power, which application was accepted by defendant and constituted a contract between the parties; that the defendant supplied electric service to the plaintiff under said last-named agreement until June, 1931, for which the plaintiff freely paid; that each of said applications and contracts was in the form and contained the terms and conditions as set forth in the defendant's filed schedules and contained all the terms and conditions intended by the parties to be set forth and embodied therein, followed by an allegation of due performance.

The second defense sets up the failure of the plaintiff to avail itself of its remedy under the Public Service Law and that the subject-matter of the action is within the exclusive jurisdiction of the Public Service Commission.

The matter now comes before the court on two motions:

(1) For an order striking out the first and second separate defenses contained in the answer, upon the ground of insufficiency, and

(2) For judgment on the pleadings and dismissing the complaint upon the ground that the complaint fails to state facts sufficient to constitute a cause of action.

The motions will be considered in their inverse order.

The complaint proceeds upon the theory that the law imposes a duty upon the defendant, pursuant to the agreement, to *select* for the plaintiff a service classification at the most reasonable rates and most suitable and favorable to the plaintiff's requirements; that the plaintiff was ignorant of the service classification most suitable for it, and that the plaintiff relied upon the defendant to select the same; and that the defendant negligently and without proper investigation selected the No. 2 rate contract, which was not the most favorable one to plaintiff's requirements.

I find it difficult to reconcile plaintiff's reasoning, as stated in the memorandum submitted, that the defendant, although not under any legal obligation, did on its own volition *undertake* to perform the service of selection for the plaintiff of a classification rate most suitable for its requirements, with the allegation of the complaint wherein it is set forth that the defendant, as required by law and pursuant to agreement, did offer, undertake and agree to select for the plaintiff the most reasonable and most suitable classification for its requirements; and the conclusion arrived at, that the defendant in *undertaking* to perform that act for the plaintiff immediately put itself under a legal obligation to perform in a proper manner, and if negligent in performance would be liable in damages. The language used in the complaint is plain enough to carry the implication that the defendant was required by law and pursuant to agreement and that in accordance with that legal obligation and pursuant to the agreement did undertake and agree to select the most economical and suitable classification of electric service for the plaintiff.

From the papers submitted I gather that plaintiff is seeking to sustain a proposition that there was a common-law duty on the part of the defendant to undertake the selection of the most suitable classification and rate. And that the defendant on its own volition did so undertake and agree, and its failure so to do con-

stituted negligence. There are no facts alleged in the complaint to sustain any such contention. What are pleaded are mere conclusions of law and fact, and the court will not be moved by mere conjecture in the premises.

To constitute actionable negligence there must be not only a lack of care, but such lack of care must involve a breach of some duty owed to a person who is injured in consequence of such breach. (45 C. J. 631.) And in Shearman and Redfield on Negligence (6th ed.) a cause of action upon negligence is thus analyzed. Negligence in the defendant and damage to the plaintiff must concur. Negligence consists in

(1) A legal duty to use care;

(2) A breach of that duty;

(3) The absence of distinct intention to produce the precise damage, if any, which actually follows.

With this negligence, in order to sustain a civil action, there must concur (a) damage to the plaintiff, and (b) a natural and continuous sequence, uninterruptedly connecting the breach of duty with the damage, as cause and effect.

Can we read these elements into plaintiff's cause of action? No legal duty can be read into the agreement as pleaded in the complaint, and consequently no damage can arise from a breach of a non-existent duty. An examination of the long line of cases cited by the plaintiff shows they are based upon a gratuitous undertaking or an agreement to undertake a particular duty, and the principles of law enunciated are predicated upon some overt act on the part of the party sought to be charged.

In the instant case the relationship between the parties being contractual, the liability of the defendant in an action for negligence must arise out of some positive duty which the law imposes because of the relationship, not merely a moral duty; and it must be a duty which the defendant owed to the plaintiff. Assume for the sake of argument that the defendant was under a legal duty to select the most suitable rate classification for use by the plaintiff. Such would be a most unreasonable requirement, and the law is not unreasonable. In what manner could the defendant's agents, servants or employees know the volume of the plaintiff's business with respect to electrical requirements — what would be the minimum or maximum demand or load factors in any given period of time; or what changes the plaintiff might make in the use of electric energy or in the electrical installation.

In fact, the plaintiff itself could hardly know those facts in advance, and to charge the defendant with that knowledge and a consequent legal duty would require prescience and prophecy.

Such a procedure would be well nigh impossible. It is of the essence of negligence that the defendant should have had at least constructive knowledge of the duty required to be performed. To hold the defendant liable in this case upon the theory of negligence, it is essential that the duty alleged to have been breached was a duty which was owed to the plaintiff in person or property. The allegations of the complaint are conclusory in their nature. Facts are not pleaded to show the existence of any legal duty on the part of the defendant, nor are the terms of the agreement set forth, nor the provisions of the rate classification involved, nor any facts to sustain plaintiff's contention.

From a most careful examination of the complaint, I am of the opinion that no legal duty existed on the part of the defendant toward the plaintiff to form the basis for a selection of a rate classification. Nor is the court aware of any legal duty resting upon the defendant to select for the plaintiff what will prove to be the most suitable classification. The duties of the defendant company are governed by the Transportation Corporations Law and the Public Service Law. Provision is made for the filing and publication of schedules showing all rates and charges, all forms of contract and all rules and regulations relating to rates, for free consultation by customers, and it is for the customers to determine with the knowledge possessed by the applicant the particular rate classification most suitable for the purposes required. No duty has ever been imposed by law or statute upon a public utility corporation to select for one of its customers electric service that will be most favorable and suitable for that customer.

A research among the authorities discloses no decision in New York on the particular question involved here. In New Hampshire, however, a somewhat similar issue was decided by the Supreme Court in that State (*Pantebakos* v. *Rockingham County L. & P. Co.*, 81 N. H. 441; 128 Atl. 534; 38 A. L. R. 1063). The action was brought by a customer of an electrical company to recover a rebate of money paid by him for services upon the ground that under a more favorable rate than that which was applied to him the charges would have been less than those which he paid. The court in its opinion, by YOUNG, J., said: " The duty and the only duty, in so far as the question we are considering is concerned, which the law imposes on a public service corporation, in addition to those it imposes on an individual engaged in selling goods or services, is that prescribed by Laws of 1911, chapter 164, section 7, in respect to making and publishing its rates and charges, and the court has found that the defendant had complied

with the provisions of that section at the time the plaintiff became one of its customers.

" The test, therefore, to determine the validity of the defendant's exception is to inquire whether the common law makes it the duty of an individual to use reasonable means to inform his customers in respect to the economical way to use the goods they purchase, for the plaintiff's sole complaint is that the defendant failed to use such means to give him adequate information in respect to using electricity economically. * * *

"As we have seen, there is no statute or specific rule of the common law which imposes that duty on either an individual or a public service corporation. On the contrary, it is common knowledge that those engaged in the business of selling standard goods are not accustomed to advise their customers as to the best way to use them.

" In short, the court erred when it ruled that it is the duty of a public service corporation to use reasonable means to give its customers adequate information in respect to the economical way of using the electricity they purchased."

Under the New York law, the making of a contract between the plaintiff and the defendant is precedent to the obligation of the defendant to furnish electric service. The Transportation Corporations Law, section 12 (as amd. by Laws of 1926, chap. 762), requires that gas and electricity shall be supplied only " on application." That section provides in pertinent part: " § 12. Gas and electricity must be supplied on application. Upon written application of the owner or occupant of any building within one hundred feet of any main of a gas corporation or gas and electric corporation, or a line of an electric corporation * * * appropriate to the service requested, and payment by him of all money due from him to the corporation, it shall supply gas or electricity as may be required for lighting such building."

The Public Service Law (§ 66, subd. 12, as amd. by Laws of 1930, chap. 774), in providing for the filing with the Commission and the printing and keeping open to public inspection by electric companies of schedules showing all rates and charges and " all forms of contract or agreement and all rules and regulations relating to rates," clearly contemplates the making of a contract between the electric company and the customer. The rate schedules of gas companies and electric companies, which are made public records by statute (Pub. Serv. Law, § 16, subd. 1, as amd. by Laws of 1921, chap. 134), commonly contain a number of separate service classifications appropriate to the requirements of various classes of customers, with varying terms and conditions appropriate to

each service classification, and with these schedules are set forth forms of contract applicable to the respective service classifications.

The obligation of the defendant as an electric company to furnish the character and quantity of service specified in any particular service classification and to charge the rates applicable thereto depends upon the antecedent act by the applicant for service of making a contract with the defendant under the service classification selected by him.

The initiative in making application for service and determining the requirements for service and so selecting the particular service classification to which the customer intends to conform his service requirements, rests with the customer.

There is no legal doctrine such as the plaintiff assumes that the electric company has " superior knowledge " of the prospective requirements of a customer which naturally are exclusively under the customer's control.

With respect to the second cause of action setting up the breach of warranty, what has been already said will apply with equal force here. And, furthermore, no facts are pleaded to sustain a warranty. What the plaintiff in substance pleads is that it relied on the representation and warranty of the defendant in selecting contract known as No. 2 rate as the most suitable and favorable for plaintiff's use, and thereupon entered into same, and subsequently learned that contract known as No. 6 rate was more suitable, thereby suffering the damage complained of by that false representation.

The only contract pleaded by the plaintiff is one for electric service, which is subject to the terms and conditions therein contained, among which are:

" (1) Modification of Contracts.— This contract in respect to the term and the other conditions of service provided herein is subject to any changes similar to those that may be made in corresponding contracts for like service when such changes have been filed with the Public Service Commission, in accordance with the statutes of the state. Copies of all contract forms, terms, service conditions and riders are on file with the Public Service Commission and at the company's main and branch offices, where they may be freely consulted. Under appropriate contract applying to all customers alike, the company is prepared to supply electrical energy for any desired purpose.

" (n) Acceptance by the Company.—This contract shall not be binding upon the Company until accepted by it through its proper executive officer, and shall not be modified or affected by any promise, agreement or representation by any agent or employee of the company, unless incorporated in writing herein before such acceptance."

There is no complaint as to the quality of the electric service furnished by the defendant, but the alleged breach of warranty goes to the prospective financial results which the plaintiff sets forth were detrimental to it. In other words, there is not involved any question of goods sold, but that the rate alleged to have been selected by the defendant for the plaintiff caused it to pay excess charges.

It seems to me the plaintiff is begging the whole question in stating in its brief that " when the defendant undertook, agreed and promised to select for the plaintiff the proper classification and the plaintiff relied on the defendant's promise, the defendant knew at that time, or should have known, that the plaintiff would not investigate the various rates offered by the defendant, but that plaintiff was relying upon the defendant's superior knowledge and investigation and would determine for it [plaintiff] the proper classification."

Nowhere in the complaint are there material facts pleaded to support such an affirmative statement, nor any facts to show the plaintiff relied upon the alleged agreements and promises on the part of the defendant to select what plaintiff now considers the proper rate number classification. Furthermore the forms of agreements and rate schedules were posted with the Public Service Commission as required by law so that the plaintiff was bound to take notice of same, and neglecting to investigate such schedules and rate classification was its own peril; nor can it be determined that the defendant's superior knowledge of its own business would gainsay knowledge of the requirements for electric service most suitable for the plaintiff.

The views herein expressed make it unnecessary to consider the motion to strike out the separate defenses. The motion to dismiss the complaint for insufficiency is granted, with ten dollars costs. Settle order on three days' notice.